# IN RE ZAKAI F.*
## (SC 20234)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn, and Ecker, Js.**

*Syllabus*

The respondent mother appealed to the Appellate Court from the judgment
of the trial court, which denied her motion for reinstatement of guardian-
ship rights with respect to her minor child, Z. The respondent had
voluntarily agreed to relinquish temporary guardianship of Z to Z's mater-
nal aunt, the petitioner. Subsequently, when the respondent requested

---

* In accordance with the spirit and intent of General Statutes § 46b-142
(b) and Practice Book § 79a-12, the names of the parties involved in this
appeal are not disclosed. The records and papers of this case shall be open
for inspection only to persons who have a proper interest therein and upon
order of the Supreme Court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3)
(2018); we decline to identify any party protected or sought to be protected
under a protective order or a restraining order that was issued or applied
for, or others through whom that party's identity may be ascertained.

** The listing of justices reflects their seniority status on this court as of
the date of oral argument.

that the petitioner return Z to her care, the petitioner filed in the Probate
Court a petition for immediate, temporary custody of Z and an applica-
tion for the removal of the respondent as the guardian of Z. The Probate
Court issued an order vesting the petitioner with immediate, temporary
custody of Z. Thereafter, the case was transferred to the Superior Court,
where the parties entered into a stipulated agreement, pursuant to which
the court transferred guardianship of Z to the petitioner but ordered
limited visitation between Z and the respondent. Subsequently, the
respondent filed her motion for reinstatement. In denying the respon-
dent's motion and granting a separate motion filed by Z's guardian ad
litem to suspend overnight visitation with the respondent, the trial court
found that the respondent was capable of adequately providing for Z
and that there had never been a judicial adjudication of neglect or abuse
of Z but nevertheless concluded, on the basis of a fair preponderance
of the evidence, that reinstatement of the respondent's guardianship
rights was not in Z's best interests. On appeal to the Appellate Court,
the respondent claimed, inter alia, that the trial court violated her federal
constitutional right to the care and custody of Z in denying her motion
for reinstatement without finding that she was unfit and without finding
by clear and convincing evidence that Z would be at a substantial risk
of harm if guardianship were terminated. Thereafter, the Appellate Court
affirmed the trial court's judgment, concluding that the respondent could
not prevail on her unpreserved claim under the third prong of *State* v.
*Golding* (213 Conn. 233) because the petitioner and Z, through his
guardian ad litem, rebutted the constitutional presumption that reunifi-
cation with the respondent was in Z's best interests. The Appellate Court
also concluded that proof by a fair preponderance of the evidence was
the applicable standard in a proceeding for reinstatement of guardian-
ship. On the granting of certification, the respondent appealed to this
court, claiming that she was entitled to a presumption that reinstatement
was in the best interests of Z and to a heightened standard of proof.
*Held* that a parent seeking reinstatement of guardianship pursuant to
statute (§ 45a-611), who has demonstrated that the factors that resulted
in the parent's removal as guardian have been resolved satisfactorily,
is entitled to a rebuttable, constitutional presumption that reinstatement
is in the best interests of the child, a third party seeking to rebut that
presumption must do so by clear and convincing evidence, and, because
it was unclear whether the trial court applied this presumption, and
because that court applied the preponderance of the evidence standard,
the judgment of the Appellate Court was reversed, and the case was
remanded for further proceedings: this court previously concluded in
*In re Juvenile Appeal* (*Anonymous*) (177 Conn. 648) that parents of a
child committed to the state youth and children services agency are
entitled to a presumption, in the absence of a continuing cause for
commitment, that revocation of such commitment will be in the child's
best interests, and it found that conclusion to be equally applicable to

In re Zakai F.

reinstatement of guardianship proceedings; moreover, this court concluded, after weighing the factors set forth in *Mathews* v. *Eldridge* (424 U.S. 319), that due process requires a third party seeking to rebut the presumption that reinstatement of guardianship is in the child's best interests to do so by clear and convincing evidence, as the application of that heightened standard of proof in this context most appropriately balances the parent's interest in the companionship, care, custody and management of his or her child, and the interest of the child in safety and consistency, as well as not being dislocated from the emotional attachments that derive from the intimacy of daily association with his or her parent; furthermore, application of the clear and convincing standard in this context serves to reduce the risk of error, the cost of which is significant given the weight of the private interests at stake, and serves the interests of the state in protecting the welfare of the child, reducing the cost and burden of guardianship proceedings, and ensuring that such proceedings are conducted fairly.

Argued May 2, 2019—officially released July 22, 2020***

*Procedural History*

Petition by the maternal aunt for immediate, temporary custody of the respondent mother's minor child and application by the petitioner for the removal of the respondent as guardian of the child, brought to the Probate Court for the district of Derby, which issued an order vesting the petitioner with immediate, temporary custody of the child; thereafter, the case was transferred to the Superior Court in the judicial district of Ansonia-Milford, where the respondent filed a motion to vacate the order of immediate, temporary custody; subsequently, the case was transferred to the Superior Court in the judicial district of New Haven, Juvenile Matters, where the guardianship of the child was transferred to the petitioner pursuant to a stipulated agreement between the parties; thereafter, the court, *Conway, J.*, denied the respondent's motion to reinstate her guardianship rights, granted the motion filed by the guardian ad litem to suspend overnight visitation with the respondent, and rendered judgment thereon, from which the respondent appealed to the Appellate Court, *DiPentima, C.*

*** July 22, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

In re Zakai F.

*J.*, and *Alvord* and *Bear, Js.*, which affirmed the judgment of the trial court, and the respondent, on the granting of certification, appealed to this court. *Reversed; further proceedings.*

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent mother).

*Albert J. Oneto IV*, assigned counsel, for the appellee (petitioner).

*David B. Rozwaski*, assigned counsel, for the minor child.

*Joshua Michtom*, assistant public defender, filed a brief for the Office of the Chief Public Defender as amicus curiae.

*Louise Truax* and *Leslie I. Jennings-Lax* filed a brief for the Connecticut Chapter of the American Academy of Matrimonial Lawyers as amicus curiae.

*Stacy L. Schleif* and *Jay E. Siklick* filed a brief for the Center for Children's Advocacy, Inc., as amicus curiae.

*William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Michael Besso*, *Benjamin Zivyon*, *Evan O'Roark* and *Sara Nadim Swallen*, assistant attorneys general, filed a brief for the Commissioner of Children and Families as amicus curiae.

*Opinion*

McDONALD, J. In this certified appeal, we must determine whether there is a constitutional presumption that reinstatement of guardianship rights to a parent under General Statutes § 45a-611[1] is in the best

_____

[1] General Statutes § 45a-611 provides in relevant part: "(b) In the case of a parent who seeks reinstatement, the court shall hold a hearing . . . . If the court determines that the factors which resulted in the removal of the parent have been resolved satisfactorily, the court may remove the guardian and reinstate the parent as guardian of the person of the minor, if it determines that it is in the best interests of the minor to do so. . . ."

Although § 45a-611 (b) was the subject of technical amendments in 2018; see Public Acts 2018, No. 18-45, § 9; those amendments have no bearing on

In re Zakai F.

interests of the child and, if so, whether a heightened standard of proof is required to rebut that presumption. The respondent mother,[2] Kristi F., appeals from the judgment of the Appellate Court, which affirmed the trial court's denial of her motion for reinstatement of guardianship rights with respect to her minor son, Zakai F., on the basis that reinstatement was not in Zakai's best interests. See *In re Zakai F.*, 185 Conn. App. 752, 755, 776–77, 198 A.3d 135 (2018). On appeal, the respondent contends that she is entitled to a presumption that reinstatement is in the best interests of the child and that she is also entitled to a heightened standard of proof.

We conclude that, under § 45a-611, once a parent demonstrates that the factors that resulted in the removal of the parent as guardian have been resolved satisfactorily, the parent is entitled to a presumption that reinstatement of guardianship rights is in the best interests of the child. We also conclude that the party opposing reinstatement must rebut this presumption by clear and convincing evidence. In the present case, because it is unclear whether the trial court applied this presumption, and because it did not determine that the petitioner had rebutted that presumption by clear and convincing evidence, we conclude that the trial court improperly denied the respondent's motion for reinstatement of guardianship. Accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history. Zakai was born in early 2011 and resided with the respondent until approximately July,

the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We note that, although the respondent mother filed the motion at issue in this appeal, the original action commenced when the child's aunt brought a petition for immediate, temporary custody and an application for removal of guardianship. Therefore, we refer to the mother as the respondent and to the aunt as the petitioner throughout this opinion. This nomenclature is also consistent with that utilized by the Appellate Court.

2013, when the respondent voluntarily agreed that the petitioner, Nikki F., the respondent's sister and Zakai's maternal aunt, would care for Zakai. The parties agreed that the petitioner would temporarily care for Zakai while the respondent pursued employment opportunities and obtained appropriate housing and a reliable vehicle. The respondent reassumed custody and care of Zakai in late January or early February, 2014. Thereafter, Zakai was physically assaulted by the respondent's live-in boyfriend, Montreal C., while the respondent was at work. Although both Montreal and the respondent were initially criminally charged after the assault, the charges against the respondent were dropped.

Given the respondent's continued work commitments and Zakai's emotional and physical state following Montreal's abuse of Zakai, the respondent agreed that Zakai again would stay temporarily with the petitioner. Less than one week later, the respondent requested that the petitioner return Zakai to her care. The petitioner did not respond to the respondent's request but, instead, filed a petition for immediate, temporary custody and an application for removal of guardianship in the Probate Court for the district of Derby in February, 2014, alleging, among other things, that Montreal continued to live at the respondent's home despite a restraining order barring him from contact with Zakai. The Probate Court issued an ex parte order granting the petitioner immediate, temporary custody of Zakai but did not rule on the petitioner's motion for removal of guardianship.

In July, 2014, "the respondent filed a motion in the Probate Court for transfer of the case to the Superior Court. On July 16, 2014, the motion was granted, and the case was transferred to the family division of the Superior Court in Milford. [In August], 2014, the respondent filed a motion to vacate the Probate Court order granting the petitioner temporary custody of Zakai. On September 29, 2014, by agreement of the parties, the

court ordered that (1) a guardian ad litem be appointed for Zakai; (2) the respondent continue to engage in anger management counseling, therapy, and parenting classes; and (3) the respondent be afforded supervised visitation with Zakai at a location other than the home of the petitioner up to twice a week, subject to the requirements that the length of visitation be determined by the petitioner, visitation occur only at sites acceptable to the petitioner, and only persons acceptable to the petitioner be present during visitation.

"In the fall of 2014, the respondent was arrested after an incident in a public park involving the petitioner and a maternal uncle of Zakai, and she was charged with threatening and breach of [the] peace. A criminal protective order was issued barring any contact between the respondent and the petitioner but reserving for the family division of the Superior Court the issue of the appropriateness of the respondent's continued contact with Zakai. [In April], 2015, the court granted the petitioner's motion to have the case transferred to the juvenile division of the Superior Court in New Haven.

"On June 18, 2015, the court . . . ordered the Commissioner of Children and Families (commissioner) to conduct a guardianship study. The guardian ad litem moved for a [court-ordered] psychological evaluation of the parties, and that motion was granted on December 29, 2015." (Footnote omitted.) Id., 756–57.

In December, 2015, by agreement of the parties, the court modified the visitation schedule to allow a private agency to arrange two weekly visits between the respondent and Zakai. Thereafter, in January, 2016, the court increased the length of Sunday visits from two to four hours. Then, in March, 2016, the trial court granted an ex parte motion to suspend unsupervised visitation.[3]

_____

[3] The motion alleged that the respondent and Montreal had been arrested on felony narcotics charges. The respondent testified, however, that the March, 2016 drug charges were not pursued. The trial court noted, it "may be that it was also in 2016 when [the respondent] was placed on probation

In re Zakai F.

A hearing on the respondent's motion to vacate the order of temporary custody and the petitioner's motion to transfer guardianship was scheduled for September 21, 2016. Before the hearing, however, the court approved an agreement resolving all outstanding issues. By agreement of the parties, the court transferred guardianship of Zakai to the petitioner, ordered unsupervised daytime visits between the respondent and Zakai, and ordered that, until the protective order was resolved or modified, the petitioner would have a third party present in her home while exchanging custody of Zakai with the respondent. The stipulation also required that any further expansions of the visitation schedule, including overnight visits, would be arranged through family therapy.

Approximately nine months later, in June, 2017, the respondent filed a motion to reinstate her guardianship rights to Zakai. "Subsequently, the court again ordered the commissioner to conduct and complete a guardianship study pursuant to General Statutes § 46b-129 (n). The respondent subsequently filed a motion for overnight visitation on November 3, 2017, which was heard with her motion for reinstatement of guardianship. . . . [After several days of hearings on the motions, on] December 12, 2017, the court elected to hold in abeyance any definitive ruling on the motion to reinstate the respondent's guardianship rights and instead ordered that Zakai immediately commence overnight visits with the respondent. The court further ordered that the respondent exclusively was to care for Zakai during the overnight visits and that there was to be no contact between Zakai and any unrelated male adults."[4] Id., 758.

for the 2014 breach of [the] peace conviction . . . . [The respondent] testified [that] a condition of probation was urine testing and remaining substance abuse free." (Citation omitted.)

[4] In making its December, 2017 ruling to commence overnight visits with the respondent, the trial court explained that the respondent had struggled to sustain a lifestyle conducive to having Zakai return to her care. Specifically, the court noted the choices in child care the respondent had made that resulted in Montreal's abuse of Zakai and the death of her eldest infant

In re Zakai F.

On February 2, 2018, the guardian ad litem filed a motion to suspend overnight visitation, alleging that the respondent had violated the court's December 12, 2017 order by allowing an unrelated male to stay at her home while Zakai was there. The guardian ad litem also represented that Zakai reported to his therapist that the respondent had hit him and his sister. Thereafter, the court reconvened the proceedings to hear testimony and receive other evidence regarding both the motion to suspend overnight visitation and the respondent's June, 2017 motion to reinstate her guardianship rights. The court heard additional testimony from numerous witnesses on February 15, February 28, and March 1, 2018.

On March 1, 2018, the court issued a memorandum of decision addressing the respondent's motion to reinstate guardianship and the guardian ad litem's motion to suspend overnight visitation. First, the court noted that, since the 2014 inception of this case, "there has never been a judicial adjudication of neglect or abuse as to Zakai, and no court has ever committed Zakai to the care and custody of [the Department of Children and Families]," and that Zakai's placement with the petitioner, initially in 2013 and then following the February, 2014 assault, was by family agreement. The court next explained that § 45a-611 (b) was the appropriate statutory framework within which to consider the respondent's motion for reinstatement of guardianship. See footnote 1 of this opinion. Under that statutory framework, the court found that "the reasons and events that prompted the agreed to 2016 transfer of guardianship have been sufficiently ameliorated. [The respondent] is capable of providing Zakai with appropriate housing,

daughter, who died while the respondent left her daughter in the care of the child's father. The court also noted that "[i]t took her a long time, and some would argue too long, to disengage from [Montreal]. *But she appears to have permanently done so for* [*more than one*] *year now*." (Emphasis added; internal quotation marks omitted.)

nutrition and clothing, and she is capable of meeting his educational, medical and physical safety needs. [The respondent] and Zakai share a loving parent-child like bond and, when [Zakai] feels he is in a safe environment, [the respondent] and [Zakai] enjoy quality time together.'' (Footnote omitted.)

The court then went on to consider whether reinstatement of guardianship was in Zakai's best interests. The court stated that, ''[c]ommencing in February, 2014, [the respondent] has remained steadfast in her efforts to have Zakai return to her care. Since 2014, she has obtained and sustained appropriate housing, [and] stable and sufficient employment, and she has engaged in court-ordered anger management [and] mental health treatment and abided by the conditions of a protracted criminal protective order and conditions of probation. She sought out and, for at least [one and one-half years], paid for professional parenting/visitation services, and she has diligently and respectfully attended juvenile court proceedings and abided by the juvenile court's orders. By all accounts, [the respondent] successfully parents her younger daughter as a single mother.''

The court weighed these findings against testimony and evidence regarding Zakai's emotional and physical debilitation before and after overnight visitation with the respondent and his need for permanency. Specifically, the court credited the testimony of Zakai's first grade teacher, Zakai's therapist, and the petitioner. Each of these witnesses testified that, on days that Zakai is scheduled to visit with the respondent, he demonstrates regressive, debilitating behavior, and that there has been a negative change in his behavior since the commencement of overnight visits with the respondent.[5]

_____

[5] Zakai's first grade teacher testified that Zakai ''consistently exhibited less than ideal behavior [on] the days he [was] scheduled to visit with [the respondent]'' and that those behaviors ''escalated in both intensity and frequency'' since the court ordered increased visitation with the respondent. Zakai's teacher further testified that, on the days that Zakai was scheduled

In re Zakai F.

The court explained that, given the degree of early childhood trauma Zakai has experienced, the amount of time he has spent in the petitioner's care, and the lack of security he feels when he is in the respondent's care, to abruptly remove him from the petitioner's care would be cruel and exacerbate his alarming behaviors. The court also noted that, ''[p]roverbially speaking, Zakai is screaming for permanency; he wants and needs to know his one 'forever' home.''

The court ultimately found that, based on a fair preponderance of the evidence, it was not in Zakai's best interests to return to the respondent's care. As such, the court denied the respondent's motion to reinstate guardianship and granted the guardian ad litem's motion to suspend overnight visitation. The court further ordered that any visits between the respondent and Zakai would occur at the sole discretion of the petitioner.

The respondent appealed from the judgment of the trial court to the Appellate Court. On appeal to the Appellate Court, the respondent claimed, among other things, that the trial court violated her fundamental right under the United States constitution to the care and custody of Zakai when it denied her motion for reinstatement of guardianship without finding that she was unfit and without finding by clear and convincing evidence that Zakai would be at a substantial risk of harm if the current guardianship were terminated.[6] *In re Zakai F.*,

to visit with the respondent, he asked to go to the school nurse and reported having gotten sick in the bathroom, when he was not sick. The petitioner also testified that Zakai threw temper tantrums and exhibited other problematic behavior on days that he was scheduled to visit with the respondent, and that he asked to go to the doctor to get a note that he is sick.

[6] In the Appellate Court, the respondent also claimed that the trial court had abused its discretion in determining that reinstatement of the respondent as guardian was not in Zakai's best interests. See *In re Zakai F.*, supra, 185 Conn. App. 755. The Appellate Court concluded that the trial court did not abuse its discretion. Id., 776–77. On appeal to this court, the respondent did not pursue her claim of abuse of discretion.

In re Zakai F.

supra, 185 Conn. App. 760. The Appellate Court reviewed the respondent's unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[7] See *In re Zakai F.*, supra, 765–75.

The Appellate Court concluded that, although the first two prongs of *Golding* were satisfied, the respondent could not prevail under the third prong. See id. Specifically, it concluded that "the [trial] court properly considered evidence from both the petitioner and Zakai, through their attorney and guardian ad litem, rebutting the presumption that reunification with the respondent was in Zakai's best interest[s]. . . . Thus, because the court [correctly] determined that the petitioner and Zakai rebutted the constitutional presumption . . . the respondent has failed to satisfy the third *Golding* prong . . . ." Id., 769. The Appellate Court also concluded that proof by a fair preponderance of the evidence is the applicable standard to be applied in a proceeding for reinstatement of guardianship, and, thus, the trial court applied the correct standard. Id., 773–75. This certified appeal followed.[8]

---

[7] "Under *Golding*, it is well settled that a defendant may prevail on an unpreserved claim when: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' . . . *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, [supra, 317 Conn. 781] (modifying third prong of *Golding*)." *State* v. *McClain*, 324 Conn. 802, 809 n.5, 155 A.3d 209 (2017).

[8] We granted the respondent's petition for certification to appeal, limited to the following issue: "When a parent who has temporarily relinquished custody seeks reinstatement of guardianship rights under . . . § 45a-611, is there a constitutional presumption that reinstatement is in the best interests of the child, and, if so, does a heightened [standard] of proof apply pursuant to *Santosky* v. *Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)?" *In re Zakai F.*, 330 Conn. 957, 198 A.3d 584 (2018). Upon review of the record and the claims raised before the Appellate Court, we now conclude that the certified question is not an adequate statement of the issue

In re Zakai F.

I

Resolution of the certified issue in this appeal requires us to first consider whether, when a parent seeks reinstatement of guardianship rights under § 45a-611, the parent is entitled to a constitutional presumption that reinstatement is in the best interests of the child, once the parent has established that the cause for removal no longer exists.[9] Both the respondent and the petitioner agree that such a presumption is required.[10]

We begin with the text of § 45a-611 (b), which provides in relevant part: "If the court determines that the

properly before this court. Specifically, the respondent had not temporarily relinquished custody, but, after the Probate Court granted the petitioner's request for an order of immediate, temporary custody in 2014, approximately two years later, the respondent agreed to a transfer of guardianship in 2016. Accordingly, we reformulate the certified question as follows: "When a parent who has agreed to a transfer of guardianship seeks reinstatement of guardianship rights under . . . § 45a-611, is there a constitutional presumption that reinstatement is in the best interests of the child, and, if so, does a heightened standard of proof apply pursuant to *Santosky* v. *Kramer*, supra, 455 U.S. 745?" See, e.g., *State* v. *Skipwith*, 326 Conn. 512, 516 n.4, 165 A.3d 1211 (2017) (court may reformulate certified question to conform to issue actually presented and to be decided on appeal); *State* v. *Ouellette*, 295 Conn. 173, 183–84, 989 A.2d 1048 (2010) (same).

[9] We agree with the Appellate Court that this issue was not preserved, but we nevertheless review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 7 of this opinion. We conclude that the respondent has satisfied the first two prongs of *Golding*, and, therefore, we focus our analysis on the third prong. Under the third prong, we consider whether "the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 240; see *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*).

[10] The guardian ad litem for the minor child argues that, even if a constitutional presumption that reinstatement is in the best interests of the child is generally required, it is not required under the facts of the present case. He fails, however, to cite any legal authority in support of his position. Accordingly, we deem that claim to be inadequately briefed and decline to address it. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016) ("Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.)).

In re Zakai F.

factors which resulted in the removal of the parent have been resolved satisfactorily, the court may remove the guardian and reinstate the parent as guardian of the person of the minor, if it determines that it is in the best interests of the minor to do so. . . .'' Nothing in the language of the statute itself requires a presumption that reinstatement with a parent is in the best interests of the child.

Practice Book § 35a-20 also governs the procedure by which a parent can seek reinstatement of guardianship. Practice Book § 35a-20 (d) provides: ''The hearing on a motion for reinstatement of guardianship is dispositional in nature. The party seeking reinstatement of guardianship has the burden of proof to establish that cause for transfer of guardianship to another person or agency no longer exists. The judicial authority shall then determine if reinstatement of guardianship is in the child's or youth's best interest.'' Practice Book § 35a-20, like § 45a-611, does not address whether there is a presumption in place.

To date, this court has not explicitly addressed whether a parent seeking reinstatement of guardianship is entitled to a constitutional presumption that reinstatement is in the best interests of the child. We do, however, have guidance from our case law bearing on this question in an analogous context and find our decision in *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 420 A.2d 875 (1979), instructive. In that case, a mother sought revocation of her child's commitment to the Commissioner of Children and Youth Services, pursuant to General Statutes (Rev. to 1977) § 17-62 (f).[11] See id., 650, 657.

In *In re Juvenile Appeal (Anonymous)*, the trial court ''[r]ecogniz[ed] that cause for commitment no longer

---

[11] We note that language similar to that of General Statutes (Rev. to 1977) § 17-62 (f) is presently codified at General Statutes § 46b-129 (n). We also note that § 46b-129 (n) is similar to § 45a-611.

existed from the time the petition for revocation was brought . . . [but] nevertheless concluded that separation of the child from her foster family at that time would be contrary to her best interests, and consequently denied the [mother's] petition for revocation.'' Id., 658. On appeal, this court examined the language of General Statutes (Rev. to 1977) § 17-62 (f) and recognized that it set forth a burden shifting scheme. See id., 659. Specifically, this court concluded that ''[c]learly the burden is [on] the person applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, as in this case, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is a natural parent who has moved to revoke commitment, the state must prove that it would *not* be in the best interests of the child to be returned to his or her natural parent.'' (Emphasis in original.) Id.

In explaining the burden shifting scheme, this court expressly held that a presumption that revocation of commitment would be in the child's best interests should apply. This court explained that, ''[although] it is certainly true, as we have held, that parents have no natural right to the custody of their children that can prevail over a disposition [a]ffecting the child's best interests . . . parents are entitled to the presumption, [in the absence of] a continuing cause for commitment, that revocation will be in the child's best interests unless the state can prove otherwise.'' (Citations omitted.) Id., 659–60.

In adopting a presumption that revocation is in the best interests of the child in *In re Juvenile Appeal (Anonymous)*, this court relied on a prior decision of this court, *Claffey* v. *Claffey*, 135 Conn. 374, 64 A.2d 540 (1949). See *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 659–60. In *Claffey*, a mother sought to regain custody of her daughter from the paternal grand-

parents. See *Claffey* v. *Claffey*, supra, 374–75. This court explained that, ''[a]t least, where the controversy is not between the father and the mother . . . the mother has a prior right to custody unless the circumstances are such that to give it to her would not be for the best interests of the child. . . . That, under normal circumstances, the interests of a young child . . . will be best served by growing up in the care of her mother does not admit of question.'' (Citation omitted.) Id., 377. This court's reliance on *Claffey* in *In re Juvenile Appeal (Anonymous)* demonstrates that the presumption that revocation is in the best interests of the child exists even when the other party involved is not a state actor.

Ultimately, this court in *In re Juvenile Appeal (Anonymous)* affirmed in part the decision of the Superior Court, concluding that ''[t]here was ample evidence from which the court could have concluded that despite the absence of a continuing cause for commitment, the state had demonstrated that because of the length of the separation between [the] mother and [the] child, for whatever reason, and the intervening relationship that had developed between the child and her foster family, it would not at that time have been in the child's best interests to return to the custody of her mother. In the denial of the [mother's] motion for revocation of commitment, there was no error.'' *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 668.

Although the commitment at issue in *In re Juvenile Appeal (Anonymous)* was to a state actor; see id., 659–60; we find the court's conclusion requiring a presumption that revocation is in the best interests of the child equally applicable to reinstatement of guardianship proceedings in the present context. Indeed, in addressing the presumption, this court expressly stated that, ''[i]n any controversy between a parent and [anyone not a parent—including relatives, friends or child care agencies] the parent . . . should have a strong

initial advantage, to be lost only [when] it is shown that the child's welfare plainly requires custody to be placed in the [other party].'' (Footnote omitted; internal quotation marks omitted.) Id., 662; see id., 662 n.12; see also *In re Bennett* v. *Jeffreys*, 40 N.Y.2d 543, 548–49, 356 N.E.2d 277, 387 N.Y.S.2d 821 (1976). Furthermore, the cases relied on by this court in support of the presumption in *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 660–61, were cases involving private citizens, not state actors. See *Claffey* v. *Claffey*, supra, 135 Conn. 374, 377; *In re Spence-Chapin Adoption Service* v. *Polk*, 29 N.Y.2d 196, 198, 203, 274 N.E.2d 431, 324 N.Y.S.2d 937 (1971).

Accordingly, we conclude that a parent seeking reinstatement of guardianship under § 45a-611, who has demonstrated that the factors that resulted in the parent's removal as guardian have been resolved satisfactorily, is entitled to a presumption that reinstatement is in the best interests of the child.

In the present case, the Appellate Court explained: "Although we are cognizant of the respondent's claim that she, having never been adjudicated as an unfit parent, was entitled to a presumption that she would act in Zakai's best interest[s], such a presumption is not absolute, but may instead be rebutted by contradictory evidence of Zakai's best interest[s].'' *In re Zakai F.*, supra, 185 Conn. App. 767. Despite the fact that it is not clear whether the trial court applied a presumption that reinstatement was in Zakai's best interests, the Appellate Court then concluded that, "because the court [correctly] determined that the petitioner and Zakai rebutted the constitutional presumption that it was in Zakai's best interest[s] to be returned to the respondent's care, the respondent has failed to satisfy the third *Golding* prong as to the constitutional presumption that, because she was a fit parent, the best interest[s] standard required that Zakai be returned to her.'' Id., 769.

On the basis of the foregoing, the Appellate Court correctly recognized that, once a parent has demonstrated that the cause for removal no longer exists, she is entitled to a presumption that reinstatement is in the best interests of the child. See id., 767, 768. It is unclear, however, that the trial court applied this presumption. Although the trial court weighed the respondent's progress against testimony and evidence regarding Zakai's emotional and physical debilitation before and after overnight visitation with the respondent and his need for permanency, it never explicitly applied a presumption. Indeed, this court has never previously addressed whether a parent seeking reinstatement of guardianship is entitled to a constitutional presumption that reinstatement is in the best interests of the child. Accordingly, because it is unclear whether the trial court applied a presumption, and in light of our conclusion in part II of this opinion that the trial court did not apply the correct standard of proof, the Appellate Court improperly affirmed the judgment of the trial court.

II

The presumption we have adopted in part I of this opinion allows a parent to file a motion for reinstatement of guardianship, and, as long as the parent can show that the reasons that led to the transfer of guardianship have been ameliorated, the parent is entitled to a rebuttable presumption that reinstatement is in the best interests of the child. Having now adopted this presumption, we also conclude, consistent therewith, that the burden must shift to the nonparent to rebut the presumption that reinstatement is in the best interests of the child. The question that remains is what standard of proof must be met for the nonparent to rebut the presumption.

"The trial court's determination of the proper legal standard in any given case is a question of law subject to our plenary review." *Fish* v. *Fish*, 285 Conn. 24, 37,

In re Zakai F.

939 A.2d 1040 (2008). "Where no standard of proof is provided in a statute, due process requires that the court apply a standard which is appropriate to the issues involved." *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 296, 455 A.2d 1313 (1983). Here, § 45a-611 does not provide a standard of proof to be applied in a proceeding concerning the reinstatement of guardianship of a minor, and this court has never addressed which standard of proof is applicable. In this civil case, there are only two choices: the preponderance of the evidence or the clear and convincing evidence standard.

The United States Supreme Court has made clear that "its decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular standard. To the contrary, the [c]ourt has engaged in a straightforward consideration of the factors identified in [*Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] to determine whether a particular standard of proof in a particular proceeding satisfies due process." *Santosky* v. *Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The balancing test set forth in *Eldridge* involves weighing the following three factors: "the private interests affected by the proceeding; the risk of error created by the [s]tate's chosen procedure; and the countervailing governmental interest supporting [the] use of the challenged procedure." Id.; see also *Mathews* v. *Eldridge*, supra, 335. We evaluate each factor in turn.

A

We first consider the private interests affected by the proceeding. "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss. . . . Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the [fact finder] turns on both the nature of the private

In re Zakai F.

interest threatened and the permanency of the threatened loss.'' (Citations omitted; internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 758.

The nature of the threatened loss in the present case could not be more profound: it is the fundamental right to family integrity. See, e.g., id., 758–59; *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 284. The ''right to family integrity . . . encompasses the reciprocal rights of both [the] parent and [the] children . . . the interest of the parent in the companionship, care, custody and management of his or her children . . . and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association . . . with the parent . . . .'' (Citations omitted; internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 310, 709 A.2d 1089 (1998). In other words, parents and children share a compelling interest in remaining together as a family unit. See, e.g., *In re Christina M.*, 280 Conn. 474, 486–87, 908 A.2d 1073 (2006) (''[i]n cases involving parental rights, the rights of the child coexist and are intertwined with those of the parent'' (internal quotation marks omitted)); see also, e.g., *Santosky* v. *Kramer*, supra, 455 U.S. 760 (''the child and his parents share a vital interest in preventing erroneous termination of their natural relationship'').

It is well established that ''the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court.'' *Troxel* v. *Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). ''The rights to conceive and to raise one's children have been deemed 'essential' . . . 'basic civil rights of man' . . . and '[r]ights far more precious . . . than property rights' . . . . 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' . . . The integrity of the

In re Zakai F.

family unit has found protection in the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment . . . the [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment . . . and the [n]inth [a]mendment [to the United States constitution] . . . .'' (Citations omitted.) *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); see also *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 284.

In addition to their fundamental right to family integrity, children have an additional interest in safety and consistency. See *Osborne* v. *Ohio*, 495 U.S. 103, 109, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990). When there never has been a finding of abuse or neglect, the child's safety interest should not necessarily be afforded equal weight with the shared constitutional interest in family integrity. This court has previously concluded in a related context that it is only when serious physical harm or immediate danger is present that the child's and the parent's shared interests in family integrity diverge. See *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 287–88 (only when "serious physical illness or serious physical injury" or "immediate physical danger" is present does "the child's interest[s] no longer [coincide] with [those] of the parent, thereby diminishing the magnitude of the parent's right to family integrity . . . and therefore the state's intervention as parens patriae to protect the child becomes so necessary that it can be considered paramount" (citation omitted; internal quotation marks omitted)). When, as in the present case, there has been no finding of parental unfitness or abuse or neglect, it is inappropriate to afford the child's general interest in safety equal weight to the shared constitutional interest in family integrity.[12] Cf. *Santosky* v. *Kramer*, supra, 455

---

[12] The concurring and dissenting justice asserts that the trial court's finding that "Zakai [did] not feel safe and secure in the [respondent's] care" provides a sufficient basis to conclude that the shared constitutional interests of Zakai and the respondent in family integrity are not aligned. Indeed, the concurring and dissenting justice also notes that the "very nature of a proceeding for reinstatement of guardianship necessarily involves a situation

In re Zakai F.

U.S. 760 ("At the [fact-finding stage], the [s]tate cannot presume that a child and his parents are adversaries. . . . [U]ntil the [s]tate proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." (Citation omitted.)). Indeed, in a reinstatement of guardianship proceeding, prior to being entitled to the presumption, the parent must have already demonstrated that the factors that resulted in removal—including the child's safety—have been resolved satisfactorily. See General Statutes § 45a-611 (b).

To the extent that the child's interest in safety is implicated, we note that the Supreme Court of Nebraska has explained that applying a heightened standard of proof in reinstatement of guardianship proceedings will actually promote the safety of children by encouraging parents experiencing difficulties to seek out temporary guardians, "safe in the knowledge that they will be able to regain custody in the future." *In re Guardianship of D.J.*, 268 Neb. 239, 248, 682 N.W.2d 238 (2004); see also *Boddie* v. *Daniels*, 288 Ga. 143, 146–47, 702 S.E.2d 172 (2010) ("[G]uardianships are intended to encourage parents experiencing difficulties to temporarily turn over the custody and care of their children—safe in the

in which a parent has not been the primary caretaker for the child for some period of time," and the child has likely established "emotional connections and bonds with the individual who has been providing daily care to the child . . . ." The concurring and dissenting justice reasons that, "the longer the child is apart from his or her parent, the more that his or her interests may diverge from that of the parent." On the other hand, however, the concurring and dissenting justice contends that the failure to reinstate guardianship is not permanent. These two statements are seemingly at odds with each other. Although a parent technically may continue to seek reinstatement of guardianship pursuant to § 45a-611, if the child's emotional connections with the guardian grow stronger with each passing day, the parent will never be successful at reinstating guardianship. This creates an effectively permanent deprivation, which requires heightened safeguards to protect the interests involved. See, e.g., *Santosky* v. *Kramer*, supra, 455 U.S. 758–61; *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160, 68 L. Ed. 2d 640 (1981).

knowledge that they will be able to regain custody in the future. This policy would be frustrated if guardianships were [difficult to terminate and constitutional parental rights were not protected], because parents would be less likely to voluntarily petition for a guardian to be appointed to care for their minor children. Therefore, children would unnecessarily be placed in jeopardy in many circumstances.'' (Internal quotation marks omitted.)). Adopting the lower, preponderance of the evidence standard likely would serve as a significant disincentive for responsible parents to seek out temporary guardians in times of need for fear that they will not be able to reestablish guardianship of their child. Moreover, despite the fact that the reasons that resulted in the removal of the parent as guardian had been resolved satisfactorily, evidence that a child's safety was nonetheless implicated would likely be among the strongest evidence a nonparent would have to rebut the presumption that reinstatement is in the best interests of the child by clear and convincing evidence.[13]

A child's interests in family integrity and safety may be in equipoise in certain proceedings, such as a neglect proceeding, because the safety interest of the child is squarely implicated and the court has available to it different options, short of removal, that correspond to the risk to the child and the parent's ability to meet the child's needs. See *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 287–88; see also *Pamela B.* v. *Ment*, supra,

---

[13] The concurring and dissenting justice states that we do not appropriately balance the interests of the child with those of the parent, suggesting that by adopting a heightened standard of proof, we create an insurmountable obstacle to the party opposing reinstatement. We disagree. The presumption we adopted in part I of this opinion is a rebuttable one. Numerous factors, most notably the safety of the child, could be sufficient to rebut the presumption by clear and convincing evidence. This strikes the appropriate balance between the fundamental right to family integrity and a recognition that circumstances may still exist that render reinstatement not in the best interests of the child.

In re Zakai F.

244 Conn. 313–14 ("[a]lthough a child's physical and emotional well-being outweighs the interest in preserving the family integrity, the disruption of a child's family environment should not be extended beyond what is unequivocally needed to safeguard and preserve the child's best interests"). The child's interests in family integrity and safety are not in equipoise, however, during proceedings to reinstate guardianship when there has been no finding of abuse or neglect because, as discussed, the child's safety interest may not be implicated, and the denial of reinstatement results in continued removal of the child from the parent's custody and does so in the absence of imminent danger to the child.[14] Accordingly, we conclude that the nature of the interests weighs in favor of a heightened standard of proof.

Turning to the permanency of the deprivation, we note that, although a denial of reinstatement of guardianship under § 45a-611 does not necessarily work a permanent deprivation of all parental rights, it deprives the parent of the most essential attributes of parenthood, such as the right to control the child's care, education, health, religion, and association for the duration of the guardianship.[15] See *Roth* v. *Weston*, 259 Conn. 202,

[14] The express statutory protection for the safety of children contained in § 45a-611 (b)—that the court determine that the grounds for removal no longer exist—is not included in the third-party custody statute that was at issue in *Fish* v. *Fish*, supra, 285 Conn. 24. In *Fish*, this court held that a third party must, among other things, demonstrate that parental custody would be detrimental to the child. Id., 89. There is no such requirement in a reinstatement proceeding. As a result, reinstatement proceedings are also distinguishable from third-party custody proceedings.

[15] Although the extent of deprivation is one factor to consider, a bright-line rule pursuant to which only permanent termination of parental rights cases would be subject to a clear and convincing standard is inappropriate. As the United States Supreme Court has explained, "[u]nlike the [c]ourt's [right to counsel] rulings, its decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular standard. To the contrary, the [c]ourt has engaged in a straightforward consideration of the factors identified in [*Mathews* v. *Eldridge*, supra, 424 U.S. 335] to determine whether a particular standard of proof in a particular proceeding satisfies due process." *Santosky* v. *Kramer*, supra, 455 U.S. 754.

In re Zakai F.

216–17, 789 A.2d 431 (2002); see also General Statutes § 45a-604 (5) (" '[g]uardianship' means guardianship of the person of a minor, and includes: (A) The obligation of care and control; (B) the authority to make major decisions affecting the minor's education and welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment; and (C) upon the death of the minor, the authority to make decisions concerning funeral arrangements and the disposition of the body of the minor"). As the present case demonstrates, a court denying reinstatement of guardianship may also deny visitation, thereby denying the parent of the ability to make important decisions regarding the child's upbringing and also depriving the parent and the child of a meaningful relationship, creating a de facto and permanent termination of rights. See footnote 16 of this opinion.

The United States Supreme Court has required "an intermediate standard of proof—clear and convincing evidence—when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." (Internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 756. Connecticut law implements the clear and convincing standard in a variety of contexts, including those that involve only monetary disputes. See, e.g., *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008) (clear and convincing standard is appropriate standard of proof in common-law fraud cases); *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509 (clear and convincing standard is required to determine whether attorney violated Rules of Professional Conduct), cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 163–64, 681 A.2d 293 (1996) (clear and convincing evidence standard of proof is required

to establish collusion); *Papallo* v. *Lefebvre*, 172 Conn. App. 746, 754, 161 A.3d 603 (2017) (clear and convincing standard of proof is required to establish fiduciary fair dealing). It would strain rationality if a parent could lose her constitutional right to parent her child by a mere preponderance of the evidence when a party must prove fraud for the purpose of recovering monetary damages, or a lawyer's ethical lapse—claims certainly less weighty than the fundamental right to parent a child—by a heightened, clear and convincing standard.

The United States Supreme Court has recognized that even a temporary deprivation of a constitutional right may require a heightened standard of proof. See *Santosky* v. *Kramer*, supra, 455 U.S. 759 ("In [government initiated] proceedings to determine juvenile delinquency . . . civil commitment . . . deportation . . . and denaturalization . . . [the United States Supreme] Court has identified losses of individual liberty sufficiently serious to warrant imposition of an elevated burden of proof. Yet juvenile delinquency adjudications, civil commitment, deportation, and denaturalization, at least to a degree, are all *reversible* official actions." (Citations omitted; emphasis in original.)). For example, in *Addington* v. *Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979), the United States Supreme Court held that the clear and convincing standard was required in a civil commitment proceeding despite the fact that the appellant had the right to periodic review of his condition and immediate release when he was no longer deemed to be a danger to himself or others. See id., 422, 433.

This court has similarly recognized the importance of decisions temporarily affecting parental rights. We have explained that "[e]ven a temporary custody order may have a significant impact on a subsequent permanent custody decision . . . [by] establish[ing] a foundation for a stable long-term relationship that becomes

In re Zakai F.

an important factor in determining what final custodial arrangements are in the best interests of the child.'' (Internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 403, 773 A.2d 347 (2001). As a result, this court has recognized that a temporary deprivation of a parent's right to the care and custody of her child is such a serious harm that it has deemed interlocutory orders affecting that interest to be final judgments. See, e.g., *Sweeney* v. *Sweeney*, 271 Conn. 193, 208–11, 856 A.2d 997 (2004) (pendente lite order related to religious and educational upbringing of minor child); *In re Shamika F.*, supra, 405–406 (order of temporary custody pursuant to neglect statute); *Madigan* v. *Madigan*, 224 Conn. 749, 756–58, 620 A.2d 1276 (1993) (order of temporary physical custody in dissolution action).

The petitioner and the concurring and dissenting justice contend that, because a reinstatement of guardianship proceeding does not necessarily lead to a permanent termination of parental rights, given that the parent may file additional motions for reinstatement, due process does not require that we favor the parent's interests over those of the child. We are not persuaded. First, adopting the heightened, clear and convincing standard does not favor parental rights over those of the child because both the parent and the child share a compelling interest in family integrity. Moreover, before a parent is entitled to the presumption, she must first demonstrate that the factors that resulted in her removal as guardian have been resolved satisfactorily. In many cases, this means that the parent is fit. If other circumstances, however, implicate the child's interest in safety, the nonparent will have strong evidence to rebut the presumption that reinstatement is in the best interests of the child. As such, the clear and convincing standard most appropriately balances these interests. Additionally, the fact that the parent may reapply for reinstatement in the future is often an illusory right given that

In re Zakai F.

the amount of time the child and the parent have been separated will only continue to grow, and the child likely will continue to bond more and more with the guardian. Thus, the fact that a parent may again seek reinstatement of guardianship does not diminish the constitutional significance of the deprivation of the interest at stake because "[a] lost opportunity to spend significant time with one's child is not recoverable."[16] *Taff* v. *Bettcher*, 243 Conn. 380, 387, 703 A.2d 759 (1997). Accordingly, we conclude that the first factor of the balancing test set forth in *Eldridge* strongly weighs in favor of the heightened, clear and convincing standard of proof.

B

We next consider the second factor in the *Eldridge* balancing test, specifically, "both the risk of erroneous deprivation of private interests resulting from [the] use of a 'fair preponderance' standard and the likelihood that a higher evidentiary standard would reduce that

---

[16] We note that the facts of this case render the trial court's decision tantamount to a permanent deprivation of the respondent's parental rights. Not only did the court deny reinstatement of guardianship to the respondent, but it also terminated visitation—vesting any mother-son visits in the sole discretion of the petitioner, who had a strained relationship with the respondent. As a result, the circumstances that might allow the respondent to successfully regain guardianship of Zakai are almost completely beyond her control. The effect of the trial court's decision is to indefinitely—perhaps permanently—deprive the respondent of guardianship rights. Indeed, the trial court explicitly considered permanency as an important part of its decision. The court explained that "Zakai is screaming for permanency; he wants and needs to know his one 'forever' home." Even if circumstances change in a manner that might warrant reinstatement, the respondent has already lost her constitutional interest in family integrity for several years. The time Zakai and the respondent will be separated will only continue to increase, further solidifying the "permanency" of Zakai's arrangement with the petitioner and decreasing the chance that the respondent will be able to reinstate guardianship. As such, this case is effectively a permanent transfer of guardianship under General Statutes § 45a-616a. Significantly, to establish a permanent guardianship, the court must find by *clear and convincing* evidence that the establishment of a permanent guardianship is in the best interests of the child. See General Statutes § 45a-616a (a).

In re Zakai F.

risk. . . . [Because] the . . . proceeding is an adversary contest between the [third party] and the . . . parents, the relevant question is whether a preponderance standard fairly allocates the risk of an erroneous [factfinding] between these two parties.'' (Citation omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 761.

A significant concern arises when a third party is involved in reinstatement of guardianship proceedings, which demonstrates that the preponderance standard creates a risk of erroneous deprivation of the right to family integrity. Before appointing a guardian, the state must use reasonable efforts to keep the child with the parent. See General Statutes § 45a-610; see also General Statutes § 17a-111b (a) (commissioner has statutory duty to seek to reunify child and parent except under very limited circumstances). By contrast, when a third party is opposing reinstatement of guardianship, neither the state nor the third party has any obligation to aid in the reunification of the family. The parent is not afforded the same protections to which she would have been entitled if the state, rather than a third party, had opposed reinstatement. These protections are important because, if no attempts are made to reunify the parent and the child, the child will continue to spend more time with the guardian and, as the concurring and dissenting justice notes, the child will develop stronger emotional bonds with the guardian, further reducing the parent's ability to reunify the family.[17] These protections are even more important during a proceeding to reinstate guardianship to a parent when there has been no finding of unfitness because, as the United States Supreme Court has noted, ''until the [s]tate proves parental unfitness, the child and his parents share a vital interest in pre-

_____

[17] We recognize that, in this case, the trial court did take steps to increase visitation between Zakai and the respondent. Section 45a-611, however, does not require the court, the state, or the third party to take any such steps to aid in the reunification.

venting erroneous termination of their natural relation-
ship. Thus, at the [fact-finding stage], the interests of the
child and his natural parents coincide to favor [the] use
of [error reducing] procedures.'' (Footnote omitted.) *San-*
*tosky* v. *Kramer*, supra, 455 U.S. 760–61. For these rea-
sons, we also respectfully disagree with the concurring
and dissenting justice's assertion that the existence of
the presumption that reinstatement is in the best inter-
ests of the child alone provides sufficient protection to
a parent's fundamental interest in family integrity.

The present case also implicates a concern that was
raised in *Santosky*. Reinstatement of guardianship pro-
ceedings employ the best interests of the child analysis;
see General Statutes § 45a-611 (b); which leaves the
reinstatement determination unusually open to the sub-
jective assessment of the trial judge. See *Roth* v. *Weston*,
supra, 259 Conn. 223 (''[the best interest] standard dele-
gates to judges authority to apply their own personal
and essentially unreviewable lifestyle preferences to
resolving each dispute'' (internal quotation marks omit-
ted)). As noted in the amicus brief filed by the Office
of the Chief Public Defender, this subjective analysis
''that considers a child's best interests when a parent
is fit to care for that child runs the very real risk of
infringing the . . . right [of the parents and the chil-
dren] to family integrity on the basis of poverty . . . .''
In similar contexts, this court has recognized this risk.
See, e.g., *In re Juvenile Appeal (83-CD)*, supra, 189
Conn. 292 (''[there is a] risk that judges or social workers
will be tempted, consciously or unconsciously, to com-
pare unfavorably the material advantages of the child's
natural parents with those of prospective adoptive par-
ents [or foster parents]'' (internal quotation marks omit-
ted)). Given that this subjective assessment will often
negatively affect parents of lower socioeconomic sta-
tus; see *State* v. *Anonymous*, 179 Conn. 155, 167–68,
425 A.2d 939 (1979); requiring the heightened, clear

In re Zakai F.

and convincing standard will appropriately balance the interests of the parent and the child and protect parents, especially those of lower socioeconomic status, from the erroneous deprivation of their parental rights.

Given the weight of the private interests at stake, the cost of any error in reinstatement of guardianship rights in a fit parent is significant. "Increasing the burden of proof is one way to impress the [fact finder] with the importance of the decision and thereby perhaps to reduce the chances that inappropriate [deprivations of guardianship] will be ordered." (Internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 764–65. As we have explained, "[t]he clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997). Implementing the intermediate level, clear and convincing standard would help to reduce the risk of erroneous decisions. See id., 795 ("clear and convincing evidence standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory" (internal quotation marks omitted)). Accordingly, we conclude that the second factor of the balancing test set forth in *Eldridge* weighs in favor of the clear and convincing standard of proof.

C

Finally, the third factor requires that we consider the countervailing governmental interest supporting the use of the challenged procedure, namely, "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. Although the state is not a direct party in a guardianship

In re Zakai F.

proceeding between two private parties and has no direct interest in reinstatement proceedings under § 45a-611, the state does have an interest in protecting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings. See *Santosky* v. *Kramer*, supra, 455 U.S. 766; *Fish* v. *Fish*, supra, 285 Conn. 86. The courts also have an interest in balancing the interests of the state and the parents by ensuring that the proceeding is conducted fairly. We conclude that the clear and convincing evidence standard adequately serves these interests.

As the United States Supreme Court has explained, because "the [s]tate has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision at the [fact-finding] proceeding. . . . As parens patriae, the [s]tate's goal is to provide the child with a permanent home. . . . Yet [although] there is still reason to believe that positive, nurturing parent-child relationships exist, the parens patriae interest favors preservation, not severance, of natural familial bonds. . . . [T]he [s]tate registers no gain [toward] its declared goals when it separates children from the custody of fit parents." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 766–67. Thus, when a parent who has never been found to be unfit seeks reinstatement of guardianship, the state's interest favors protecting the interest of the parent and the child in family integrity.

The state's administrative and fiscal burdens do not weigh in favor of a lesser standard of proof. Our trial judges are well versed in the application of the clear and convincing standard of proof in other related contexts. See, e.g., General Statutes § 45a-610 (removal of parents as guardians); see also, e.g., General Statutes §§ 17a-111b, 17a-112 and 45a-717 (termination of parental rights); General Statutes § 45a-650 (appointment of conservator).

Balancing these three factors, we conclude that due process requires application of the clear and convincing standard of proof to rebut the presumption that reinstatement of guardianship is in the best interests of the child under § 45a-611.[18] Cf. *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 662 ("[i]n any controversy between a parent and a [third party] the parent . . . should have a *strong* initial advantage, to be lost only where it is shown that the child's welfare *plainly* requires custody to be placed in the [third party]" (emphasis added; footnote omitted; internal quotation marks omitted)).[19] As we have explained, "[t]he goals of strengthening the family and enhancing long-term parental capacity for child care despite temporary difficulties would be seriously undermined if parents in need of help could not safely entrust their children, even for short emergencies, to someone who could give them better interim care. Such temporary arrangements under circumstances of extraordinary need should not

_____

[18] This conclusion is consistent with the legislative history of the removal statute, § 45a-610. For example, during hearings on the bill adopting the clear and convincing standard for removal of a parent as guardian, Raphael Podolsky, an attorney with the Legal Services Training and Advocacy Project, testified that the clear and convincing standard was used because the deprivation of parental rights in a temporary removal, although not permanent, could be of a substantial duration. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1983 Sess., p. 764 ("Because this bill builds in a hearing provision, *a temporary removal may be for a very extensive period of time. You're not just talking* [*thirty*] *days, you may be talking months and months and months.* And it seems to me when you're talking those terms, that you really ought to be using [the] clear and convincing [standard]." (Emphasis added.)). Viewing the standard in terms of reinstatement, Representative Richard D. Tulisano noted the concern that a parent seeking reinstatement should not face a high standard of proof. See id., p. 757 (if parent voluntarily gives up guardianship, "[i]n order to come back and take the child back, we don't want the parent put in a situation where they would have to show that the temporary guardian has to be removed, has to show clear [and] convincing [evidence]").

[19] Given our conclusion that due process requires the application of the clear and convincing standard of proof, we need not address the respondent's request that we use our supervisory authority to adopt a heightened standard of proof.

In re Zakai F.

put parents in the position of risking permanent loss of their children due to the intervention of the state.'' Id., 660–61. A party who opposes the reinstatement of a parent's constitutional rights to rear a child must be required to overcome the presumption by more than a mere preponderance of the evidence—the lowest and most basic level of evidentiary proof at trial. Indeed, in order to trigger the presumption, the parent must have already demonstrated that the factors that resulted in her removal as guardian have been resolved. Accordingly, we conclude that the clear and convincing standard appropriately balances the shared interest of the parent and the child in family integrity and, to the extent implicated, the child's additional interest in safety.

Courts from other jurisdictions have similarly required a clear and convincing standard of proof when a parent who has never been found to be unfit seeks reinstatement of guardianship rights. See, e.g., *In re Parental Responsibilities of E.S.*, 264 P.3d 623, 627 (Colo. App. 2011); *Tourison* v. *Pepper*, 51 A.3d 470, 471–72 (Del. 2012); *Boddie* v. *Daniels*, supra, 288 Ga. 146; *Hunter* v. *Hunter*, 484 Mich. 247, 265, 771 N.W.2d 694 (2009); *In re Guardianship of D.J.*, supra, 268 Neb. 249; *In re Guardianship of Reena D.*, 163 N.H. 107, 114–15, 35 A.3d 509 (2011); see also, e.g., *In re Guardianship of L.L.*, 745 N.E.2d 222, 230 (Ind. App.) (applying ''clear and cogent evidence'' standard), transfer denied sub nom. *Froelich* v. *Clark*, 753 N.E.2d 17 (Ind. 2001).[20] Although we decline to go as far, the Supreme Court of Arkansas has held that all a fit parent needs to do to terminate a third-party guardianship created by con-

[20] We recognize that there are some jurisdictions that have applied the preponderance of the evidence standard. See, e.g., *In re D.I.S.*, 249 P.3d 775, 786 (Colo. 2011); *In re Guardianship of David C.*, 10 A.3d 684, 686 (Me. 2010); *In re Guardianship of Barros*, 701 N.W.2d 402, 409 (N.D. 2005), overruled on other grounds by *In re G.L.*, 915 N.W.2d 685 (N.D. 2018). Because we conclude that the preponderance of the evidence standard does not adequately protect the fundamental right to family integrity, we are not persuaded by these jurisdictions and decline to adopt their reasoning.

In re Zakai F.

sent is to revoke his or her consent to the guardianship. *In re Guardianship of W.L.*, 467 S.W.3d 129, 133–34 (Ark. 2015). Thus, we conclude that a third party seeking to rebut the presumption that reinstatement of guardianship rights to a parent who has never been found to be unfit is in the best interests of the child must do so by clear and convincing evidence.

In the present case, the respondent voluntarily relinquished temporary guardianship of Zakai. After spending years in the custody of the petitioner, the trial court ultimately concluded that the factors that resulted in the removal of the respondent as guardian had been resolved and that the respondent had demonstrated that she was capable of providing for Zakai. Throughout this case, there has never been a judicial adjudication of parental unfitness or neglect or abuse of Zakai. The trial court, however, went on to conclude—by a preponderance of the evidence—that, on the basis of Zakai's emotional and physical debilitation before and after visitation with the respondent, and the length of time Zakai has been in the petitioner's care, reinstatement of guardianship was not in Zakai's best interests.[21]

Because the trial court applied the preponderance of the evidence standard and not the clear and convincing evidence standard, the respondent's constitutional due process rights were violated, and, as such, she has satisfied the third prong of *Golding*. Accordingly, the Appellate Court improperly affirmed the judgment of the trial court, and the case must be remanded for further proceedings. See *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 127, 43 A.3d 759 (2012) ("[w]hen an incorrect legal standard is applied, the appropriate remedy is to reverse

---

[21] Although we do not take a position on whether the petitioner would be able to rebut the presumption by clear and convincing evidence, we note that Zakai's "less than ideal behavior" is unfortunate but that "some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent." (Internal quotation marks omitted.) *Boddie* v. *Daniels*, supra, 288 Ga. 146.

In re Zakai F.

the judgment of the trial court and to remand the [case] for further proceedings''); see also *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 765, 966 A.2d 188 (2009) (*Schaller, J.*, concurring in part and dissenting in part) (same).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion ROBINSON, C. J., and PALMER and D'AURIA, Js., concurred.

MULLINS, J., with whom KAHN and ECKER, Js., join, concurring in part and dissenting in part. I agree with and join part I of the majority opinion, but I respectfully disagree with part II of the majority opinion.

I

The majority's decision is based on the premise that, ''[w]hen, as in the present case, there has been no finding of parental unfitness or abuse or neglect, it is inappropriate to afford the child's general interest in safety equal weight to the shared constitutional interest in family integrity.'' From this premise, the majority concludes that the constitutional presumption that guardianship should be reinstated in the parent must be overcome by clear and convincing evidence that reinstatement is not in the best interests of the child. I would conclude, consistent with our prior case law, that children have independent interests in safety *and stability. In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 287, 455 A.2d 1313 (1983) (''The child, however, has two distinct and often contradictory interests. The first is a basic interest in safety; the second is the important interest . . . in having a stable family environment.'' (Emphasis omit-

In re Zakai F.

ted.)). Therefore, it is not only the child's general interest in safety that is appropriate to consider, but the important interest of stability must also be considered. Thus, I fundamentally disagree with the majority's premise and conclusion.

I believe that it is not only appropriate, but required, for a trial court to take into account the interests of both the parent and the child in family integrity and the additional interests of the child in safety and stability, even when there has been no finding of parental unfitness. In my view, it does not follow that, in the absence of findings of parental unfitness or abuse or neglect, the interests of the parents and of the child are *ipso facto* aligned. Indeed, there may be no finding of parental unfitness; nevertheless, a child may not be safe or feel safe in that parent's care.

In a reinstatement proceeding, the child has had guardianship transferred to another person, either voluntarily or involuntarily, for some period of time. Typically, that child has started to form bonds with his or her day-to-day caretakers while out of his or her parents' care. In this very case, at the time the trial court denied the motion of the respondent, Kristi F., for reinstatement of guardianship, the child had been out of his parent's care for approximately five years of his seven year life. During this time, multiple attempts at reunification proved unsuccessful due to the respondent's inability to prioritize the child's emotional and physical health. It is this period of separation of the family unit that gives rise to the need to consider the child's independent interests in safety and stability, separate from the parent's and the child's shared right to family integrity. Indeed, the longer the period of separation and the stronger the bonds the child makes with his or her caregiver, the more the interest of the child in stability may diverge from the interests of the parents. I do not mean to suggest that the parent's interests are unimportant, only that

the child's interests are also significant and may diverge from those of the parent during that period of separation.

It is imperative for the trial judge not to presume that the interests of the parents and the child align—and thus the child's right to safety is somehow less important, as the majority posits—simply because there is no finding of parental unfitness. Rather, the trial judge should consider the equally important interests the child has in safety and stability when determining what disposition is in the best interests of the child. The constitutional presumption that reinstatement is in the best interests of the child adequately protects the right to family integrity. Requiring that presumption to be overcome by the heightened, clear and convincing evidence standard does not adequately protect the child's potentially divergent interests in safety and stability in a reinstatement proceeding. Therefore, I would conclude that, combined with the presumption that reinstatement of guardianship to the parents is in the best interests of the child, the fair preponderance of the evidence standard properly balances the interests of the parents and the child. Accordingly, I would affirm the judgment of the Appellate Court.

II

Although I generally agree with the facts as presented in the majority opinion, I summarize the relevant facts and procedural history here to provide background to my opinion. Zakai F. was born in early 2011 and resided with his mother, the respondent, for approximately two years. In 2013, the respondent and the petitioner, Nikki F., who is the respondent's sister and Zakai's maternal aunt, agreed that the petitioner would care for Zakai.

In early 2014, the respondent reassumed custody and care of Zakai. Shortly thereafter, the respondent's live-in boyfriend, Montreal C., physically assaulted and seriously injured Zakai. Montreal was ultimately prose-

cuted for the assault. See *In re Zakai F.*, 185 Conn. App. 752, 756, 198 A.3d 135 (2018).

After Zakai's assault, the respondent agreed that Zakai again would stay with the petitioner. About four or five days later, the respondent requested that the petitioner return Zakai to her care. The petitioner did not return Zakai and instead filed a petition for immediate temporary custody and an application for removal of guardianship in the Probate Court, alleging that, even after a restraining order was issued, barring Montreal from contact with Zakai and prohibiting him from being at the respondent's home, Montreal continued to live at the respondent's home. The petitioner further alleged that the respondent had been involved with the Department of Children and Families (department) in 2009 because the respondent's eldest daughter had died from injuries caused by the daughter's father. The Probate Court issued an ex parte order granting the petitioner immediate temporary custody of Zakai, but the court did not rule on the petitioner's motion for removal of guardianship. As a result, Zakai continued living with the petitioner.

Subsequently, the case was transferred to the family division of the Superior Court. On September 29, 2014, by agreement of the parties, the court ordered that (1) a guardian ad litem be appointed for Zakai, (2) the respondent continue to engage in anger management counseling, therapy, and parenting classes, and (3) the respondent be afforded supervised visitation with Zakai. Thereafter, the case was transferred to the juvenile division of the Superior Court in New Haven. That court allowed for unsupervised visits between the respondent and Zakai and increased the length of Sunday visits from two to four hours.

Then, in March, 2016, the attorney for Zakai filed an ex parte motion to suspend unsupervised visitation. The attorney for Zakai alleged, as grounds for the motion,

In re Zakai F.

that the respondent and Montreal had been arrested on felony charges.[1] The trial court granted the ex parte motion, thereby suspending unsupervised visitation.

In September, 2016, prior to a scheduled hearing on the respondent's motion to vacate the order of immediate, temporary custody and the petitioner's motion to transfer guardianship, the court accepted and approved an agreement resolving all outstanding issues. Pursuant to this agreement, the court transferred guardianship of Zakai to the petitioner, ordered unsupervised daytime visits between the respondent and Zakai, and ordered that, until the protective order was resolved or modified; see footnote 1 of this opinion; the petitioner would have a third party present in her home while exchanging custody of Zakai with the respondent. The stipulation also required that any further expansions of the visitation schedule, including overnight visits, would be arranged through family therapy.

Thereafter, in 2017, the respondent filed a motion to reinstate her guardianship rights to Zakai and one for overnight visitation. After a hearing, in December, 2017, the court issued its order and "elected to hold in abeyance any definitive ruling on the motion to reinstate the respondent's guardianship rights and instead ordered that Zakai immediately commence overnight visits with the respondent. The court further ordered that the respondent exclusively was to care for Zakai during the overnight visits and that there was to be no contact between Zakai and any unrelated male adults." Id., 758.

In making its December, 2017 ruling to commence overnight visits with the respondent, the trial court explained: "Clearly, up until the last [one and one-half years], [the respondent] has struggled to achieve and

_____

[1] The respondent was also arrested in 2014 and charged with threatening and breach of the peace for an incident at a public park involving Zakai's maternal uncle and the petitioner. A criminal protective order was issued, barring any contact between the respondent and the petitioner.

In re Zakai F.

sustain a lifestyle conducive to having Zakai return to her care. It took her a long time, and some would argue too long, to disengage from [Montreal]. But she appears to have permanently done so for [more than one] year now. The remaining obstacle—one of the remaining obstacles—that needs to be navigated now is whether [the respondent's] choices . . . [including whom she allows to care] for and to have contact with [Zakai], are sound and safe choices. . . . The terrible, heart-breaking death of [the respondent's] eldest infant daughter, who died while [the respondent] left [her] in the . . . care [of the child's father] and then, subsequently, Zakai's beating by [Montreal], again a caregiver chosen by [the respondent] when she went to work to pay the bills. These traumatic, tragic events occurred due in large part to choices and exercises in judgment by [the respondent]. Zakai cannot afford to have history repeat itself. . . . [The respondent] must understand that the court, in its orders today, is trying to facilitate the strengthening of the mother-child bond but at the same time ensure that Zakai remains safe, both physically and emotionally.'' (Internal quotation marks omitted.)

Thereafter, the respondent and Zakai began to have weekend, overnight visits, in addition to Tuesday visits. The overnight visits initially consisted of one overnight and then, in January, 2018, the overnight visits extended from Friday, after school, through midday Sunday.

Less than two months after unsupervised, overnight visits commenced, on February 2, 2018, counsel for Zakai filed a motion to suspend overnight visitation. As grounds for the motion, counsel represented that Zakai reported that the respondent allowed an unrelated male to be in the home during Zakai's overnight visits, in violation of the explicit terms of the December, 2017 order.[2]

_____

[2] The majority relies on the fact that, at the time that the trial court issued its order in December, 2017, the trial court found that the respondent had ceased contact with Montreal for more than one year. Although I agree that

Counsel for Zakai also represented that Zakai reported
to his therapist that the respondent had hit him and his
sister, that Zakai reported to the petitioner that the
respondent told him not to tell anyone about a male
being in the home during his overnight visits, and that
Zakai stated that he did not want to continue having
overnight visits with the respondent.

On February 15, 2018, the court reconvened the pro-
ceedings to hear testimony and to receive other evi-
dence regarding both the motion filed by the counsel for
Zakai to suspend overnight visitation and the respon-
dent's June, 2017 motion to reinstate her guardianship
rights. The court heard additional testimony from numer-
ous witnesses on February 15, February 28, and March
1, 2018.

On March 1, 2018, the court issued its memorandum
of decision. The trial court found that "the reasons and
events that prompted the agreed to 2016 transfer of
guardianship have been sufficiently ameliorated. [The
respondent] is capable of providing Zakai with appro-
priate housing, nutrition and clothing, and she is capa-
ble of meeting his educational, medical and physical
safety needs. [The respondent] and Zakai share a loving

the trial court made that finding in December, 2017, I disagree with the
majority's implication that this was a fact in favor of reinstating guardianship.
Montreal was charged with assaulting Zakai in 2014, and the conditions
for visitation were that he not be at the house while Zakai was visiting.
Nevertheless, the respondent allowed Montreal to be at the house during
Zakai's visits and did not cease contact with him until March, 2016, approxi-
mately two years later. Therefore, the respondent continued having contact
with Montreal for more than two years after he was charged with assaulting
Zakai. The majority fails to note that, after making this observation, the
court also found that "one of the remaining obstacles" was the respondent's
choices, particularly as it relates to who cares for and has contact with
Zakai. Instead of being a fact that weighs in favor of the respondent's
reinstatement as guardian, as the majority posits, I would conclude that this
fact demonstrates the respondent's difficulty in making decisions that are
in the best interests of Zakai. In fact, only approximately two months after
being granted overnight visitation, the respondent had another unrelated
male in her home in direct violation of the visitation order.

parent-child like bond and, when [Zakai] feels he is in a safe environment, [the respondent] and [Zakai] enjoy quality time together.'' (Footnote omitted.) The court then explained that ''[t]he more daunting issue is determining what is now in Zakai's best interests.''

The court explained that, in December, 2017, ''progression to overnight visits appeared to be in Zakai's best interest[s]. And, although some period of adjustment to spending overnights with [the respondent] may have been foreseeable, the emotional and physical debilitation Zakai is now exhibiting is unacceptable.'' As the majority notes in its opinion: ''[T]he court credited the testimony of Zakai's first grade teacher, Zakai's therapist, and the petitioner. Each of these witnesses testified that, on days that Zakai is scheduled to visit with the respondent, he demonstrates regressive, debilitating behavior, and that there has been a dramatic negative change in his behavior since the commencement of overnight visits with the respondent.''

The court recognized that, ''[c]ommencing in February, 2014, [the respondent] has remained steadfast in her efforts to have Zakai return to her care . . . [and that] [a]ll of [the respondent's] laudable accomplishments obviously factored heavily into [the] court's December, 2017 order to immediately commence [overnight visits].'' Nevertheless, the court explained: ''The difficulty, sadly, is that the court's December, 2017 orders are subjecting Zakai to unjustifiable and debilitating emotional stress. . . . Zakai loves [the petitioner] and [his] cousins, and [the petitioner] is a mother figure to Zakai and his cousins are like siblings to him. Zakai acknowledges [the respondent] as his mother, and there is a parent-child like bond, but it is hampered by the reality that Zakai does not feel safe and secure in [the respondent's] care. Over years of contact and visits, with the gradual increase in the amount and degree of contact between [the respondent] and [Zakai] and

In re Zakai F.

[by] reintroducing Zakai to [the respondent's] home and the people important to [the respondent], it was assumed [that] Zakai would achieve an adequate sense of safety and security when with [the respondent]. Unfortunately, he has not. To the contrary, by increasing Zakai's time in [the respondent's] care and having [overnight visits] in [the respondent's] home, Zakai feels less safe. . . . Proverbially speaking, Zakai is screaming for permanency; he wants and needs to know his one 'forever' home.'' (Footnotes omitted.) The court, therefore, concluded that it was not in Zakai's best interests to return to the respondent's care and, accordingly, denied the respondent's motion for reinstatement of guardianship and granted the motion filed by the attorney for Zakai to terminate overnight visits.

These facts highlight the divide between my position and the majority's position. The fact that there is no finding of unfitness simply does not mean that the interests of the respondent and of Zakai are aligned. The court's specific finding that Zakai does not feel safe in the respondent's care supports the conclusion that their interests are not aligned. It is the fact that these separate interests exist that leads to my view that both interests must be taken into account. I agree with the majority that the shared interest in family integrity is why there should be a presumption in favor of reinstatement. Where I part ways with the majority is over what standard of proof must be met in order for the nonparent to rebut the presumption.

III

I agree with the majority that the question of the appropriate standard of proof to be applied requires a balancing of the three ''factors identified in [*Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] to determine whether a particular standard of proof in a particular proceeding satisfies due process.'' *Santosky* v. *Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388,

71 L. Ed. 2d 599 (1982). Namely, we must consider "the private interests affected by the proceeding; the risk of error created by the [s]tate's chosen procedure; and the countervailing governmental interest supporting [the] use of the challenged procedure." Id.

A

Like the majority, I first consider the private interests affected by the proceeding. In a proceeding concerning the reinstatement of guardianship, there are two private interests at stake—those of the parent and those of the child. Both must be accounted for in deciding which standard of proof should apply.

On the parental side, it is well established that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel* v. *Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Indeed, it is this fundamental right of parents to the care, custody and control of their children that the majority and I recognized by adopting the presumption that reinstatement of guardianship is in the best interests of the child.

"It must be stressed, however, that the right to family integrity is not a right of the parents alone, but encompasses the reciprocal rights of both [the] parents and [the] children. It is the interest of the parent in the companionship, care, custody and management of his or her children . . . and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association . . . with the parent . . . ." (Citations omitted; internal quotation marks omitted.) *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 284; see also *Smith* v. *Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 844, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977) ("the importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments

In re Zakai F.

that derive from the intimacy of daily association, and
from the role it plays in 'promot[ing] a way of life'
through the instruction of children'').

On the child's side, more specifically, this court has
explained that "[t]he child . . . has two distinct and
often contradictory interests. The first is a basic interest
in safety; the second is the important interest . . . in
having a stable family environment." (Emphasis omit-
ted.) *In re Juvenile Appeal (83-CD)*, supra, 189 Conn.
287.[3] If the family is intact, a child's interest in having

---

[3] The majority cites to *In re Juvenile Appeal (83-CD)*, supra, 189 Conn.
287–88, and provides a parenthetical stating that "only when 'serious physical
illness or serious physical injury' or 'immediate physical danger' is present
does 'the child's interest[s] no longer [coincide] with [those] of the parent,
thereby diminishing the magnitude of the parent's right to family integrity
. . . and therefore the state's intervention as parens patriae to protect the
child becomes so necessary that it can be considered paramount' " This
misconstrues this court's conclusion in *In re Juvenile Appeal (83-CD)*. The
portion of the opinion to which the majority cites and quotes is a discussion
of the statutory provision for summary temporary custody by the department
under then General Statutes § 17a-38 (e). This court explained that, in the
context of a statute that allows the department to take a child who lives
with his or her parents into custody without a court order, "[i]ntervention
is permitted only where 'serious physical illness or serious physical injury'
is found or where 'immediate physical danger' is present. It is at this point
that the child's interest no longer coincides with that of the parent, thereby
diminishing the magnitude of the parent's right to family integrity . . . and
therefore the state's intervention as parens patriae to protect the child
becomes so necessary that it can be considered paramount." (Citation omit-
ted.) *In re Juvenile Appeal (83-CD)*, supra, 287–88.

To the extent that the majority suggests that "serious physical illness,"
"serious physical injury" and "immediate physical danger" are *some* of the
reasons why the interests of the child and the parent would diverge, I agree.
These are certainly not the only circumstances under which those interests
may diverge, and I do not believe *In re Juvenile Appeal (83-CD)* can be
read that broadly. The majority tries to expand the court's comment on
§ 17a-38 (e) to be a statement that a child's interest can never diverge from
the parent's interest in family integrity unless there is "serious physical
illness or serious physical injury" or "immediate physical danger." That is
simply not the issue that this court decided in *In re Juvenile Appeal (83-
CD)*. That is the standard for determining whether the department can
remove a child under an order of temporary custody. However, "serious
physical illness," "serious physical injury" and "immediate physical danger"
are certainly not the only reasons why the interests of the child and the

a stable family environment often aligns with a parent's right to the care, custody and control of his or her child. Once a family is not intact, however, as is the case in a reinstatement proceeding, the parent's right to family integrity and the child's right to stability are not always or necessarily aligned.

The very nature of a proceeding for reinstatement of guardianship necessarily involves a situation in which a parent has not been the primary caretaker for the child for some period of time. Often times, as in the present case, the child has been living outside of his or her parent's care for a lengthy period of time. It is, therefore, likely that, during that period of time, the child has established emotional connections and bonds with the individual who has been providing daily care to the child and to whom guardianship was transferred. It is also likely that the longer the child is apart from his or her parent, the more that his or her interests may diverge from that of the parent. As the United States Supreme Court has explained, "[n]o one would seriously dispute that a deeply loving and interdependent relationship between an adult and a child in his or her care may exist even in the absence of [a] blood relationship." *Smith* v. *Organization of Foster Families for Equality & Reform*, supra, 431 U.S. 844; see also *Roth* v. *Weston*, 259 Conn. 202, 225, 789 A.2d 431 (2002) ("[w]e can envision circumstances in which a nonparent and a child have developed such substantial emotional ties that the denial of visitation could cause serious and immediate harm to that child").

My position should not be understood as minimizing parental rights. Indeed, I agree with the majority that the presumption that reinstatement of guardianship is in the best interests of the child is warranted precisely

parent may diverge. I need look no further than the circumstances of the present case, in which the child has been out of the respondent's care for the vast majority of his young life and feels unsafe in her care.

In re Zakai F.

because of the importance of parental rights and family integrity. I recognize, however, that this court has previously explained that, although "the rights of parents qua parents to the custody of their children is an important principle that has constitutional dimensions . . . we recognize that even parental rights are not absolute. We must reject the claim of the so-called 'parental rights' theory under which 'the parent has rights superior to all others except when he is proved unfit.' H. Clark, Law of Domestic Relations [(1968) § 17.5, p. 591]." (Citations omitted.) *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 661, 420 A.2d 875 (1979). This court has also explained: "If, for example, there has been an unusually protracted period of separation between [the] parent and [the] child, even a fit parent may possibly be found to have contributed to or acquiesced in a situation in which custody must be yielded to another." Id.

"It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or [other caretakers]. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home' . . . especially when such uncertainty is prolonged." *Lehman ex rel. Lehman* v. *Children's Services Agency*, 458 U.S. 502, 513–14, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982). Relying on this principle, the Supreme Court of California explained: "The child has a liberty [interest] . . . in a normal family home . . . with his parents if possible . . . or at least in a home that is stable . . . . This concern has been characterized as important . . . and even compelling . . . ." (Citations omitted; internal quotation marks omitted.) *In re Sade C.*, 13 Cal. 4th 952, 988, 920 P.2d 716, 55 Cal. Rptr. 2d 771 (1996), cert. denied sub nom. *Gregory C.* v. *Dept. of Children's Services*, 519 U.S. 1081, 117 S. Ct. 747, 136 L. Ed. 2d 685 (1997).

Notwithstanding the foregoing recognition by this court and other courts that a parent's rights are not absolute, especially when there has been a protracted period of

In re Zakai F.

separation, the majority concludes that the child's interests should not be given equal weight to the parent's interest in family integrity. This view neglects the perspective of the child and the child's experience during the separation. Instead, I rely on the principle that this court has long adhered to, namely, "that parents have no natural right to the custody of their children that can prevail over a disposition [a]ffecting the child's best interests . . . ." (Citations omitted.) *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 659–60.

The facts of the present case demonstrate why recognition of the child's independent right to safety and stability in the emotional attachments that the child has formed through daily association is essential in the context of reinstatement of guardianship. Here, Zakai, who was only seven years old when the trial court denied the respondent's motion for reinstatement of guardianship, had been in the care of the petitioner for approximately five years. The trial court found that Zakai viewed the petitioner as a mother figure and viewed the cousins with whom he lived as siblings. The trial court found that "to abruptly remove [Zakai] from [the petitioner's] care and home . . . would be cruel, [and would] inflict devastating loss and pain on Zakai . . . ."[4]

I would conclude that the preponderance of the evidence standard allows a trial court, when faced with a motion for reinstatement of guardianship under General Statutes § 45a-611,[5] to more fairly recognize the rights of

---

[4] The majority asserts that the heightened, clear and convincing standard is required in the present case because "[r]einstatement of guardianship proceedings employ the best interests of the child analysis . . . which leaves the reinstatement determination unusually open to the subjective assessment of the trial judge." (Citation omitted.) It is not clear to me how the clear and convincing standard counteracts the subjective assessments of the judge any more or less than the preponderance of the evidence standard. In any event, a trial court's determination of the best interests of the child is subject to review and must be sufficiently supported by factual findings.

[5] Although § 45a-611 (b) was the subject of technical amendments in 2018; see Public Acts 2018, No. 18-45, § 9; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of the statute.

In re Zakai F.

the child and to give those rights the appropriate consideration in determining best interests. See *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 298–99 (recognizing that right of parents to family integrity and child's interests in family integrity and safety are "in relative equipoise" in temporary custody proceedings).

Having established that the rights of the parent and the child are at stake in a proceeding to reinstate guardianship, I must also consider the permanency of the loss threatened by the proceeding. I recognize that the denial of a motion for reinstatement of guardianship deprives the parent, for the duration of the guardianship, of the fundamental right to "the companionship, care, custody, and management of his or her children . . . ." *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). This deprivation is by no means insignificant. Unlike a petition for termination of parental rights, however, when the clear and convincing evidence standard applies, and the "[s]tate has sought not simply to infringe upon [the parents' rights to their child], but to end it," failure to reinstate guardianship is not permanent. *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); see also *Santosky* v. *Kramer*, supra, 455 U.S. 759 ("[f]ew forms of state action are both so severe and so irreversible" as termination of parental rights).

Indeed, an order temporarily removing a parent as guardian under General Statutes § 45a-610 or by stipulated agreement, as in the present case, is neither final nor irrevocable. Instead, it is reviewable upon petition by the parent for reinstatement of guardianship pursuant to § 45a-611.[6] That is precisely what happened here; a procedure that would have been unavailable if the par-

---

[6] By contrast, a parent may be permanently removed as guardian pursuant to General Statutes § 45a-616a. If a parent is removed pursuant to § 45a-616a, § 45a-611 (d) provides that the parent may not petition for reinstatement of guardianship rights. In light of the permanent nature contemplated by those proceedings, my conclusions and analysis in the present case are not applicable to proceedings originating under § 45a-616a.

ent's rights had been terminated. Moreover, there are no express restrictions in § 45a-611 limiting how often a parent may petition for reinstatement. Thus, the denial of the motion to reinstate guardianship does not terminate a parent's parental rights; nor does it preclude the parent from filing another motion to reinstate in the future.

This court has repeatedly explained that a preponderance of the evidence standard is acceptable in nonpermanent custody proceedings. For example, this court has "concluded that a fair preponderance of the evidence is the [correct] standard of proof for a neglect petition because any deprivation of rights [at that stage] is reviewable and nonpermanent and, thus, warrants a slightly less exacting standard of proof." (Internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 401 n.22, 773 A.2d 347 (2001).

In a similar context, this court also has explained that an award of temporary custody "represents a lesser intrusion into familial relationships than does the termination of parental rights because it does not result in a final and irrevocable severance of parental rights or 'a unique kind of deprivation' that forces parents to confront the state in a termination proceeding." *Fish* v. *Fish*, 285 Conn. 24, 72, 939 A.2d 1040 (2008); see also *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 299–300 (concluding that fair preponderance of evidence standard was appropriate because, in part, orders contemplated by abuse and neglect custody proceedings are reviewable upon petition for revocation of custody, and, thus, there is lesser deprivation of parent's rights than in termination proceeding).

The majority cites to a number of cases in which the clear and convincing standard was used in civil cases and concludes that "[i]t would strain rationality if a parent could lose her constitutional right to parent her child by a mere preponderance of the evidence when a party must prove fraud for the purpose of recovering

In re Zakai F.

monetary damages, or a lawyer's ethical lapse—claims certainly less weighty than the fundamental right to parent a child—by a heightened, clear and convincing standard.'' I disagree.

First, because the denial of reinstatement of guardianship is not permanent, a parent's rights are not lost. Indeed, as I explained previously in this opinion, orders of temporary custody and neglect petitions involve taking a child out of a parent's care, and the preponderance of evidence standard is used, not the clear and convincing evidence standard. Second, the presumption that reinstatement is in the best interests of the child is not insignificant. It is a presumption that does not exist in any of the civil cases to which the majority points. Third, and perhaps most significant, the child's interests in and right to safety and stability makes the majority's analogy to other civil cases that apply the clear and convincing standard an inept comparison. If the child's interests were not appropriate to consider, when, as in the present case, there has been no finding of parental unfitness, I might agree with the majority that the clear and convincing evidence standard should apply. However, in my view, the child's interests are undoubtedly an important consideration, even when the parent seeking reinstatement has not been deemed unfit. Thus, the preponderance of the evidence standard, which allows the court to more fairly consider the child's separate right to safety and stability in the day-to-day relationships he or she has formed, particularly after a protracted period of separation from the parent, is the appropriate standard.

In sum, a reinstatement of guardianship proceeding is a situation in which the guardianship of the child already has been vested in someone other than the parent for a period of time. Given the potentially diverging private interests of both the parent and the child that are at stake, and the nonpermanent nature of the

In re Zakai F.

deprivation that occurs in a reinstatement proceeding, I would conclude that this factor weighs in favor of a conclusion that proof by a preponderance of the evidence is the appropriate standard.

B

I next consider the second factor in the *Eldridge* balancing test. Ultimately, the question is whether the fair preponderance standard fairly allocates the risk of an erroneous finding regarding the child's best interests between the parties whose interests are at stake—the parent and the child. See *Santosky* v. *Kramer*, supra, 455 U.S. 761.

As I explained in part I of this opinion, I would conclude that both the parent and the child have compelling and sometimes diverging interests to be protected in a proceeding to reinstate guardianship. In considering whether a fair preponderance of the evidence standard fairly allocates the risks, I am mindful that the majority concludes that a parent is entitled to a constitutional presumption that reinstatement of guardianship to the parent is in the best interests of the child. Thus, the presumption and the resulting burden shift to the party opposing reinstatement already recognizes the parent's rights.

The majority goes even further in protecting the parent's rights, equating the interests of the respondent in the present case with that of a "fit parent." I disagree that the concept of a "fit parent" is applicable to the present case. The cases in which we have recognized the concept of a "fit parent" involve *intact* families in which the parent had custody and guardianship of the child but was trying to defend the intact family against action by an outside party.

For instance, in *Roth* v. *Weston*, supra, 259 Conn. 202, a father who had custody and guardianship of his minor children appealed from the judgment of the trial court

In re Zakai F.

granting visitation to the children's maternal grand-mother and aunt, against his wishes. See id., 204–206. This court concluded that visitation over the objection of a fit parent may be allowed only when a third party can demonstrate "that the parent's decision [denying] visitation will cause the child to suffer real and substantial emotional harm . . . provided the petitioner has established a parent-like relationship with the child." Id., 226.

*Roth* dealt with a fit parent in an intact family. The calculus is different when we are dealing with a family that is not intact. As noted previously, this court has stated that, when there is a protracted period of separation, "even a fit parent may possibly be found to have contributed to or acquiesced in a situation in which custody must be yielded to another." *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 661. Thus, I would conclude that, although a court will consider the fitness of the parent in determining whether reinstatement is in the best interests of the child, the concept of a fit parent insofar as it presumes that the rights of the child and parent are aligned is not applicable in reinstatement of guardianship proceedings.

The California Court of Appeal rejected a similar claim regarding parental fitness, explaining: "[A] parent's constitutional right against judicial interference with the parent's day-to-day child rearing decisions applies to a fit parent who has custody of the child. Here, the parents did not have custody of the minor; a guardianship had been established, and the guardians had provided the minor with day-to-day custody and care for several years. Because the parents were not participating in the day-to-day parenting of the minor, they were not entitled to the constitutional protection afforded to parents acting in that role. The test for determining whether to terminate the guardianship was the best interest of the child. Substantial evidence sup-

ports the trial court's decision that to terminate the guardianship would have been detrimental to the minor and, thus, not in her best interest.'' *Guardianship of L.V.*, 136 Cal. App. 4th 481, 484, 38 Cal. Rptr. 3d 894 (2006).

This court has also long recognized that the rights of a fit parent are not absolute. "It is well established as a general rule that the welfare and best interests of the child are controlling elements in the determination of all disputes as to the custody; and the statutes recognizing a right to the custody of the child in either the father or [the] mother must stand aside [when] the recognition of such a right would materially interfere with the paramount right of the child to have [his or her] welfare considered and conserved by the court. The welfare of the child under the [foregoing] rule may require that [his or her] custody be denied the parent and awarded to others." (Internal quotation marks omitted.) *In re Appeal of Kindis*, 162 Conn. 239, 242–43, 294 A.2d 316 (1972).

"Determining the best interest of the minor does not necessarily require a finding that the parent is unfit." *In re Guardianship of Barros*, 701 N.W.2d 402, 408 (N.D. 2005), overruled on other grounds by *In re G.L.*, 915 N.W.2d 685 (N.D. 2018). Of course, this makes sense, and the present case is nearly a paradigmatic example of why. Here, although there was no finding that the respondent was unfit, the trial court made findings on the basis of the evidence that "Zakai acknowledges [the respondent] as his mother, and there is a parent-child like bond, but it is hampered by the reality that Zakai does not feel safe and secure in [the respondent's] care." (Footnote omitted.) The trial court also found that Zakai was being subjected to "unjustifiable and debilitating emotional stress" with increased overnight visitations with the respondent. Thus, notwithstanding the fitness of the parent, in the best interests analysis, we must account for the rights of the child, lest we risk subjecting

In re Zakai F.

children, like Zakai, to ''unjustifiable and debilitating emotional stress.''

Indeed, the statutory framework established by the legislature in § 45a-611 demonstrates that the legislature realized that, even if a parent has resolved the issues that caused guardianship to be placed with another individual, that does not end the inquiry. The court nevertheless must still determine ultimately whether reinstatement is in the best interests of the child. See General Statutes § 45a-611 (b). In doing so, our courts cannot ignore the mandates of the statute and our prior case law, which require consideration of the rights of the child.

The majority also relies on the fact that the transfer of guardianship in the present case was voluntary and, therefore, that we should require a higher standard of proof to rebut the presumption that reinstatement of guardianship is in the best interests of the child. I disagree. The statutory scheme of § 45a-611 does not provide for one standard of proof to be used when a transfer of guardianship is voluntary and another standard of proof to be used when a transfer of guardianship is not voluntary. To the contrary, the legislature adopted one statutory scheme, regardless of whether the transfer of guardianship was voluntary or involuntary.[7] That statutory scheme provides that guardianship should be reinstated only if the parent has ameliorated the reasons that caused the transfer of guardianship and *if reinstatement of guardianship is in the best interests of the child*. See General Statutes § 45a-611 (b). Accordingly,

---

[7] The facts of this case demonstrate why having a different standard for voluntary agreements to remove guardianship versus involuntary removal of guardianship would prove difficult. In the present case, although the petitioner and the respondent ultimately entered into an agreement to remove guardianship from the respondent and transfer it to the petitioner, the agreement came only after a lengthy and difficult, contested process. A review of the evidence reveals that, had the respondent not agreed to transfer guardianship, the court likely would have found that the conditions for removal of guardianship under § 45a-610 had been proven.

In re Zakai F.

I would not adopt a heightened standard of proof for
§ 45a-611 based on the fact that the respondent in the
present case agreed to the transfer of guardianship.

C

Finally, I consider "the [g]overnment's interest, includ-
ing the function involved and the fiscal and administra-
tive burdens that the additional or substitute procedural
requirement would entail." *Mathews* v. *Eldridge*, supra,
424 U.S. 335. This court previously has recognized the
state's "continuing parens patriae interest . . . in the
[well-being] of children . . . ." *In re Juvenile Appeal
(83-DE)*, 190 Conn. 310, 318–19, 460 A.2d 1277 (1983).

Adopting a presumption in favor of reinstating guard-
ianship rights to the parent while allowing the presump-
tion to be rebutted by a preponderance of the evidence
serves to strengthen the family while also protecting chil-
dren. The presumption the majority adopts in part I of
its opinion operates to shift the burden of production
and persuasion to the nonmoving party once a parent
has demonstrated that the reasons for transfer of guard-
ianship have been ameliorated. This burden shift is a
significant procedural protection for parents. If we were
to adopt the presumption in favor of reinstating guard-
ianship rights to the parent while allowing the presump-
tion to be rebutted only by clear and convincing evi-
dence—the most exacting civil standard of proof—it
would unduly favor the rights of the parent over the
rights of the child. This court has explained: "Where two
important interests affected by a proceeding are in rela-
tive equipoise, as they are in [a temporary custody pro-
ceeding], a higher standard of proof would necessarily
indicate a preference for protection of one interest over
the other. . . . We see no reason to make such a value
determination . . . ." (Citation omitted.) *In re Juve-
nile Appeal (83-CD)*, supra, 189 Conn. 298–99.

In re Zakai F.

A review of case law from other jurisdictions reveals that other courts have also determined that a preponderance of the evidence is the correct standard to be applied to rebut a presumption in favor of reinstatement of guardianship. Indeed, the Colorado Supreme Court explained: "We are persuaded . . . that the *Troxel* [v. *Granville*, supra, 530 U.S. 57] presumption and the court's statutory role in considering what is in the child's best interests can be accommodated through the guardian bearing the burden of proof by a preponderance of the evidence." *In re D.I.S.*, 249 P.3d 775, 786 (Colo. 2011); see also *In re Guardianship of David C.*, 10 A.3d 684, 686 (Me. 2010) ("although a parent seeking to terminate a guardianship in order to regain custody bears the burden of proving that termination is in his or her child's best interest . . . the party opposing the termination of the guardianship bears the burden of proving, by a preponderance of the evidence, that the parent seeking to terminate the guardianship is currently unfit to regain custody of the child"); *In re Guardianship of Barros*, supra, 701 N.W.2d 409 (concluding that "evidentiary burden placed on the nonparent . . . is a preponderance of the evidence" in termination of guardianship proceeding).[8]

The preponderance of the evidence standard ensures that the proceeding is conducted fairly by giving sufficient weight to the child's interests and by evenly allocating the risk of an erroneous determination by balanc-

_____

[8] I acknowledge that there are cases that the majority points to in which some other states have applied the clear and convincing standard. See part II C of the majority opinion. Given that our legislature has expressed its intention that the best interests of the child be paramount; see General Statutes § 45a-605 (a) ("[t]he provisions of sections 45a-603 to 45a-622, inclusive, shall be liberally construed in the best interests of any minor child affected by them, provided the requirements of such sections are otherwise satisfied"); I would join the states that apply the preponderance of the evidence standard. I also believe that the preponderance of the evidence standard more evenly balances the scales between the rights of the parents and those of the child, particularly in light of the presumption.

ing the presumption that reinstatement is in the best interests of the child with a lower standard of proof to overcome the presumption. The standard also appropriately reflects the fact that the threatened loss is not permanent. There is no indication that the fair preponderance standard would increase the fiscal burden on the state in light of the fact that courts in this state are already familiar with the fair preponderance standard in family law cases.

I also disagree with the position of the respondent and the majority that allowing a party to rebut the presumption that reinstatement of guardianship to the parent is in the best interests of the child by a preponderance of the evidence does not sufficiently protect the presumption. As Justice Borden explained in his concurring opinion in *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998), applying a preponderance of the evidence standard is sufficient in a burden shifting scheme. See id., 441–42 (*Borden, J.*, concurring). In responding to criticism that ''the burden allocation scheme [adopted in that case] will be dispositive only in those relatively rare cases in which the evidence adduced regarding the best interests of the child with respect to relocation is in equipoise''; (internal quotation marks omitted) id., 441 (*Borden, J.*, concurring); Justice Borden explained that ''the emphasis on that truism unduly minimizes the other, significant aspects of the allocation of a burden of proof. In addition to determining when the allocation will be dispositive, it also informs the parties of what precisely they have to prove. Furthermore, it provides a structure for the trial court regarding how to think about the case as it hears the evidence.'' (Emphasis omitted.) Id. Justice Borden further explained that, ''[m]ost fundamentally, however, by the law establishing a burden of proof on a particular issue, it establishes what the law considers to be the presumed outcome of a particular type of case, and states the law's position on what is necessary to change

In re Zakai F.

that outcome. This process implicitly expresses the societal values involved in the particular type of litigation in question.'' Id., 442 (*Borden, J.*, concurring).

Similarly, I would conclude that adopting a presumption that reinstatement of guardianship is in the best interests of the child and allowing that presumption to be rebutted by a preponderance of the evidence appropriately expresses the societal values involved. Specifically, it demonstrates that society believes that a child's best interests are usually served by reinstatement of guardianship to the parent but allows that presumption to be rebutted when a preponderance of the evidence demonstrates that reinstatement of guardianship is not in the best interests of the child. Providing the parent with both the presumption and the clear and convincing standard focuses on the parent's rights alone. On the other hand, a preponderance of the evidence standard fairly balances the value that society places on allowing families to remain intact with the interest of stability for a child whose guardianship has been placed in another individual for a period of time.

After evaluating each of the factors in the *Eldridge* balancing test, I would conclude that proof by a fair preponderance of the evidence is the correct standard to be applied in reinstatement of guardianship proceedings under § 45a-611. This standard most appropriately balances the issues involved in a reinstatement proceeding.

In the present case, the trial court correctly applied the fair preponderance of the evidence standard. On the basis of the evidence presented by the petitioner, the trial court found that, ''by increasing Zakai's time in [the respondent's] care and having [overnight visits] in [the respondent's] home, Zakai feels less safe.'' The trial court further found that, after it increased overnight visitation, ''the emotional and physical debilitation

In re Zakai F.

Zakai is now exhibiting is unacceptable.'' Finally, the court found that removing Zakai from the petitioner, with whom he has bonded, would be cruel and would inflict debilitating pain on him.

Accordingly, the trial court concluded that it was not in Zakai's best interests to return to the respondent's care. On the basis of these findings, I would agree with the trial court that the petitioner proved by a preponderance of the evidence that reinstatement of guardianship to the respondent was not in Zakai's best interests. I would agree with the Appellate Court that the respondent has failed to prove a constitutional violation and, accordingly, has not satisfied the third prong of *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

I would, therefore, affirm the judgment of the Appellate Court.